TEAMSTERS LOCAL UNION NO. 688, Affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Plaintiff,

v.

CUSTOM PACKAGING CORPORATION, Defendant.

No. 79–251C(3).

United States District Court,
E. D. Missouri, E. D.

May 2, 1979.

Clyde E. Craig, Wiley, Craig, Armbruster, Wilburn & Mills, St. Louis, Mo., for plaintiff.

Lawrence P. Kaplan, Suelthaus, Krueger, Cunningham, Yates & Kaplan, P. C., St. Louis, Mo., for defendant.

## MEMORANDUM

NANGLE, District Judge.

This matter is before the Court upon cross-motions for summary judgment. Plaintiff brought this suit, pursuant to 29 U.S.C. § 185, challenging the enforceability of an arbitration decision which upheld five-day suspensions imposed by the employer upon four employees represented by plaintiff union.

The relevant portion of the collective bargaining agreement which is involved herein provides:

Section 8. Discharge or suspension—The Employer shall not discharge nor suspend any employee without just cause, but in respect to discharge or suspension shall give at least one verbal warning and one (1) warning in writing of the complaint against such employee to the employee, and a copy of the same to the Local Union and Shop Steward affected, *except that no warning notice need be given to an employee before he is discharged if the cause of such discharge is dishonesty, drunkenness, possession of an illegal drug, possession of a weapon within the Company plant or gross insubordination.* The warning notice as herein provided shall not remain in effect for a period of more than nine (9) months from the date of said warning notice. [emphasis added]

The facts giving rise to the suspensions are set forth in the arbitrator's decision. Defendant Custom Packaging Corporation bottles and cans soft drinks. On September 26, 1978, shortly before the end of the bottle line shift, the packer broke down. Approximately 100 to 150 cases had yet to be run through the packer. On the following

morning, a different size bottle was to be placed into production. A company supervisor requested each of the nine employees on the bottle line to remain at work until the work was completed. Only three of the employees volunteered to stay. The production manager, through the supervisor, then directed all employees to stay until the work was completed. Although each employee was ordered to remain, four employees failed to comply and left the plant at the end of the shift. Each of these employees was subsequently suspended for five days. The arbitrator found:

> It is undisputed that the packer machinery broke down approximately ten minutes before the end of the bottling shift, and if all of these individuals were allowed to quit work with 100 to 150 cases on the line, the canning line would be completely or at least tremendously slowed down if some of the employees on that line assisted the three volunteers on the bottling line. It is also undisputed in this case that it was necessary to clear this run because the following morning a different type of bottle would be used. This machine breakdown is considered by the arbitrator to constitute an emergency and to have been beyond the control of management under the particular circumstances of this case.

The arbitrator had referred to the above-quoted provision of the collective bargaining agreement and stated:

> This particular section does not appear to be logical. An analysis of the first part of this section would tend to lead the reader to believe that each employee had the opportunity before he was ever discharged or suspended to be given at least one verbal warning and one warning in writing of the complaint against him. Does this mean that unless he fell within one of the exceptions specifically set forth, he could violate the reasonable rules of management without any penalty being involved for the first violation? As this section now reads, such a construction could be arrived at, and it does not appear reasonable to this arbitrator.

The arbitrator, however, concluded that an emergency situation existed, and that the employees, in disobeying a direct order of management, were guilty of gross insubordination, justifying the suspension without prior verbal or written warning.

■ This Court's review of the decision of an arbitrator is extremely limited.

> "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960).

It is only when "the arbitrator's words manifest an infidelity to . . . [the essence of the collective bargaining agreement that] courts have no choice but to refuse enforcement of the award". *Id.* at 597, 80 S.Ct. at 1361. Mere ambiguity is insufficient to disturb the decision. *Id.* at 598, 80 S.Ct. 1358.

> . . . a labor arbitrator's award does "draw its essence from the collective bargaining agreement" if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only when there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award. *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969).

Plaintiff argues that the discussion by the arbitrator of section 8 of the collective bargaining agreement evidences that the arbitrator was applying his own sense of industrial justice and did not adhere to the language of the contract. Plaintiff does not contend that the language of section 8 permits only discharge, and not suspension, without warning in cases of gross insubordination.

█ The Court disagrees with plaintiff's contentions herein, and concludes that summary judgment should be granted in defendant's favor. Regardless of the arbitrator's discussion of section 8 and its impact upon employees violating rules of management which do not appear within the exceptions noted therein, the arbitrator found that the employees involved were guilty of gross insubordination under the circumstances then existing and thus suspension without warning was warranted. Such interpretation clearly draws its essence from the collective bargaining agreement and is supported by the record presented. Accordingly, the Court concludes that the decision should not be disturbed. *Cf., NF&M Corporation v. United Steelworkers of America,* 524 F.2d 756 (3d Cir. 1975).

Judgment will be entered accordingly.